UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| DEBRA K. SCHAFER and TIMOTHY, ) | | |
| S. SCHAFER, Husband and Wife, ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | CAUSE NO.: 2:07-CV-163-TLS | |
| ) | | |
| JELD WEN DOORS/IWP CUSTOM ) | | |
| DOOR DIVISION, ) | | |
| ) | | |
| Defendants. ) | | |

**OPINION AND ORDER**

The Plaintiffs, Debra and Timothy Schafer, filed a six-count Complaint against the Defendant, Jeld Wen, Inc., alleging that a custom door and window unit that was manufactured and sold by the Defendant and installed in the Plaintiffs' new home was defective in construction and design, improperly finished, and failed to lock properly. The Plaintiffs assert claims for negligent design and construction (Count I), breach of express warranty (Count II), breach of implied warranty (Count III), fraud, misrepresentation, and deceit (Count IV), unjust enrichment (Count V), and conversion (Count VI). The Defendant has moved, pursuant to Federal Rule of Civil Procedure 12(b)(6), for the dismissal of four of the six counts: Counts I, IV, V, and VI. For the reasons stated in this Opinion and Order, the Court grants the Defendant's motion. The breach of express and implied warranty claims, which are not the subject of the motion to dismiss, remain pending.

**BACKGROUND**

On April 26, 2007, the Plaintiffs sued Jeld-Wen, Inc. (improperly named as Jeld Wen Door/IWP Custom Door Division)[1] in Porter Superior Court. On May 17, the Defendant removed the cause to federal court, citing 28 U.S.C. §§ 1332(a), 1441, and 1446. The Plaintiffs are residents of Porter County, Indiana. The Defendant is incorporated under the laws of the state of Oregon and has its principal place of business in Oregon. (DE 2 ¶ 4.) The amount in controversy exceeds $75,000 because the Plaintiffs seek, not only the $25,500.74 they paid for the door unit plus consequential damages, but treble damages in the amount of $76,502.22. They also assert claims for punitive damages.

On July 20, the Defendant answered the Complaint allegations regarding Counts II and III, and moved to dismiss Counts I, IV, V, and VI. On October 22, the Plaintiff responded to the motion to dismiss. On October 31, the Defendant replied and also moved to strike the Plaintiff's response as untimely.

**DISCUSSION**

Under *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies state substantive law and federal procedural law. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 754 (7th Cir. 2004).

---

[1] The Defendant maintains in its brief and in its Corporate Disclosure Statement that it was identified improperly by the Plaintiffs in the Complaint.

**A.     Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true and views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). To prevail on a motion to dismiss, the defendant must demonstrate that "the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Under the Federal Rules of Civil Procedure the plaintiff need only "set out in [his] complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim," *Scott v. City of Chi.,* 195 F.3d 950, 951 (7th Cir. 1999), and the "grounds upon which it rests," *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). Fed. R. Civ. P. 8(a). The complaint must provide more than labels and conclusions, a formulaic recitation of the elements of a cause of action, or facts that do not raise a right to relief above the speculative level. *Bell Atl. Corp.*, 127 S. Ct. at 1964–65. A plaintiff may not avoid dismissal simply by attaching bare legal conclusions to narrated facts that fail to support his claims. *Strauss v. City of Chi.*, 760 F.2d 765, 767–68 (7th Cir. 1984); *Sutliff, Inc. v. Donavan Cos.*, 727 F.2d 648, 654 (7th Cir. 1984).

**B.     Complaint Allegations**

In Count I of the Complaint, claiming negligent design and construction, the Plaintiffs allege that they purchased a custom door and window unit from the Defendant, which was

3

installed in their new residence in April or May 2005. They contend that "the door unit delivered by defendant was defective in construction and design and improperly finished and further, failed to proper[ly] lock and had excessive play and movement with its internal locking mechanisms." (Pf. Compl. ¶3.) The Plaintiffs state that the Defendant was under a duty to design, manufacture, and sell the door so that it was suitable for its intended purpose, but that the Defendant "carelessly and negligently designed, manufactured and sold a defective product which was not fit for the intended use and became warped, discolored and bowed and began to rot away from the inside and the wood is split and the door is unsightly, embarrassing, and functionally defective." (*Id.* ¶4.)  The Plaintiffs claim that, as a direct result of the Defendant's negligence, they have "become liable for great sums to repair or replace" the door, "have suffered the loss of use" of the door, "have lost great gains which they otherwise would have made and acquired" and "have been required to spend substantial time and effort to rectify the situation as well as loss and delay in the completion of their home" and have incurred expense in "matching the window unit and side lights with the defective door replacement unit." (*Id.* ¶ 6.) The Plaintiffs seek compensatory damages, punitive damages, and attorney's fees and costs.

In Count II, the Plaintiffs assert that the Defendant breached an express warranty that the door would be free from defects in material and workmanship. The Plaintiffs allege that they performed the terms and conditions of the contractual agreement and paid for the door before delivery. However, the Defendant did not repair or replace the defective door unit pursuant to the express warranty. The Plaintiffs seek the same damages on this court that they seek for Count I.

Count III is a claim for breach of an implied warranty that the door was merchantable and fit for the ordinary purpose for which such door units are intended to be used.

4

In Count IV, the Plaintiffs allege that the Defendant "falsely and fraudulently misrepresented to the plaintiffs that they would fulfill all express and implied warranties and guarantee agreements, false and fraudulently misrepresented the quality, design and manufacturer of the door unit and fraudulently offered the door unit for sale while in a defective condition." (Pf. Compl. ¶ 21.)  The Plaintiff's theory of recovery under this count is that the Defendant was under a duty to disclose the defective condition of the door unit, but fraudulently concealed the defect and affirmatively misrepresented the quality and design of the door unit, inducing the Plaintiffs to buy the door and suffer loss of the expected door and their time.

The theory presented in Count V of the Complaint is unjust enrichment. The Plaintiffs allege that on or about February 14, 2005, the Plaintiffs purchased a door and window unit through the Defendant's salesman for $25,500.74 and paid for it in advance. They allege that because the Defendant failed to deliver the door in a good and workmanlike manner, the Defendant was unjustly enriched in the amount that the Plaintiffs paid as the purchase price for the door unit.

Similarly, in Count IV, the Plaintiffs claim that the Defendant wrongfully converted the Plaintiffs' payment without delivering a defect-free door. The Plaintiffs claim that they are entitled to treble damages pursuant to Indiana Code § 34-24-3-1, which provides a civil remedy for conversion of property.

**C.     Motion to Dismiss**

The Defendant argues that even if the door unit was defective as alleged in the Plaintiffs' Complaint, their claims for negligent design and construction, fraud, unjust enrichment, and

conversion cannot be maintained under the facts of this case. The Court will discuss each count in turn.

**1.      *Negligent Design and Construction***

The Defendant argues that a claim for tort recovery is barred by Indiana's economic loss rule because the only damages the Plaintiffs seek are those to the product itself and those that are consequential to the condition of the door. The Plaintiffs respond by pointing out that they allege that because the woodwork did not match, they incurred additional time, repair, and expense that was not limited to the door itself. They also point to their request for attorney's fees as damages specifically provided for by Indiana law. The Defendant replies that the allegation regarding matching other woodwork constitutes a claim of consequential damage and minimal damage to other property, which does not remove the case from the economic loss doctrine. It contends that the request for attorney's fees is a derivative claim that does not save the underlying negligent design and construction claim. The Court agrees with the Defendant.

In *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153 (Ind. 2005), the Indiana Supreme Court summarized the scope and applicability of the "economic loss" doctrine in Indiana:

> Indiana law . . . under general negligence law is that damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely economic loss arising from the failure of the product or service to perform as expected.

*Gunkel*, 822 N.E.2d at 153. The Court further explained:

> "Economic losses" occur when there is no personal injury and no physical harm to other property. See W. Prosser, *Handbook on the Law of Torts* § 101, at 665 (4th ed.1971). Rather these losses are viewed as disappointed contractual or commercial expectations. *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319

> F.3d 921, 926 (7th Cir. 2003). Thus, economic loss has been defined by Indiana courts as "the diminution in the value of a product and consequent loss of profits because the product is inferior in quality and does not work for the general purposes for which it was manufactured and sold. Economic loss includes such incidental and consequential losses as lost profits, rental expense and lost time." *Reed* [*v. Dentral Soya Co.*], 621 N.E.2d [1069,] 1074 [(Ind. 1993)] (citations omitted). Damage to the product itself, including costs of its repair or reconstruction, is an "economic loss" even though it may have a component of physical destruction. *Progressive Ins*. [*Co. v. Gen. Motors Corp.*], 749 N.E.2d [484,] 488 [(Ind. 2001)].

*Id.*, 822 N.E.2d at 154. The theory underlying the economic loss doctrine is that when a product fails to live up to expectations, that failure is best relegated to contract law remedies, including express or implied warranties. *Id.* at 155 (stating that the law should permit the parties to a transaction to allocate the risk that an item sold does not live up to expectations).

The damages that the Plaintiffs have alleged in their Complaint are damages related to the defective product itself and the time and expense incurred replacing it and matching other woodwork. This meets Indiana's definition of economic loss. Even the claim that the Defendant is liable for "great gains which [the Plaintiffs] otherwise would have made and acquired" and "delay in the completion of their home" are incidental or consequential damages. The Complaint cannot be read to assert a claim for personal injury or physical harm to other property and, thus, does not sound in tort. Rather, the failure of the door to meet expected standards falls in the category of a disappointed commercial or contractual expectation that is best addressed by the Plaintiffs' claims for breach of express (Count II) and implied (Count III) warranty. The alleged facts regarding the defective door and the hardship it caused foreclose tort recovery. Count I of the Complaint is dismissed.

### 2.        *Fraud, Misrepresentation, and Deceit*

The Defendant argues that the Plaintiffs' claim for fraud should be dismissed because the essential elements of fraud, which must be pled with particularity, are not met. Specifically, the Plaintiffs do not allege that the Defendants made any representations of a "past or existing fact." The Plaintiffs respond that they are asserting misrepresentations of material facts that are past and existing, namely, that the door is defective and that the Defendants are maintaining that it is not and that the problems with the door are a result of the Plaintiffs' actions in failing to have a proper overhang. (DE 20 at 4.)

To establish fraud, the plaintiff must show that the defendant made a false material representation of past or existing fact, with knowledge or reckless ignorance of its falsity, which caused reliance to the detriment of the person relying on the representation. *Maynard v. 84 Lumber Co.*, 657 N.E.2d 406, 409 (Ind. Ct. App. 1995). "[A]ctual fraud may not be based on representations regarding future conduct, or on broken promises, unfulfilled predictions, or statements of existing intent which are not executed." *Comfax Corp. v. N. Am. Van Lines, Inc.* 587 N.E.2d 118, 125 (Ind. Ct. App. 1992).

The Plaintiffs' fraud claim must be dismissed because there is no false representation of a past or existing fact that is pled with "particularity." *See* Fed. R. Civ. P. 9(b) (requiring that all averments of fraud be stated with "particularity"). To satisfy the heightened pleading requirements of Rule 9(b), a plaintiff pleading fraud must state "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994); *UniQuality, Inc. v. Infotronx,*

*Inc.*, 974 F.2d 918, 923 (7th Cir. 1992). The Plaintiffs' Complaint does not attempt to provide this level of detail, assigning no identity to the speaker, the manner or place of the communication, or content of the misrepresentation. Moreover, the broad representations that are alleged do not refer to a past or existing fact.

The Plaintiffs contend in their Complaint that they purchased a custom door and window unit for their new residence (Pl. Compl. ¶ 3) and allege:

> [t]hat *prior to* the order of the window and door unit, defendant falsely and fraudulently misrepresented to the plaintiff that they *would* fulfill all express and implied warranties and guarantee agreement, false and fraudulently misrepresented the quality, design and manufacturer of the door unit and fraudulently offered the door unit for sale while in a defective condition.

(Pf. Compl. ¶ 21) (emphasis added). The Plaintiffs state that they relied upon these representations to purchase and to continue to use the door, and would not have bought the door "in its non-conforming state if the true facts had been known." (*Id.* ¶ 24, 26.)

These allegations paint a scenario of broken promises, which sound in contract, not fraud. *See, e.g., McKinney v. State*, 693 N.E.2d 65, 73 (Ind. 1998) (holding that claim under Indiana Deceptive Consumer Sales Act based on fraud was deficient where allegations that defendant made promises in the form of warranties and guarantees and then failed to perform because "[a] promise can be made without knowledge or reason to believe that it will be broken, but a statement that is false for purposes of the Act must be false when made"). The Plaintiffs allege that the Defendant represented that it "would fulfill" warranties and guarantee agreements. This is a statement regarding future conduct. The Plaintiffs' allegation that the Defendant misrepresented the "quality, design and manufacturer" of the door is a statement about how the product would perform in the future. The Plaintiffs attempt, in their response brief, to convert the

statements about the quality of the door into a present fact—the door is currently defective and the Defendant is claiming that it is not. This is not a reasonable interpretation of the Complaint and, in any event, would not meet the elements of fraud. The reasonable inference is that the statements highlight a disagreement between the parties about the quality and design of the door and who is responsible for its deteriorated condition. It cannot be inferred that the Plaintiffs relied on these statement about the door to their detriment. They had already purchased the door and attempted to replace it. In fact, the Plaintiffs claim in their brief that the Defendant's shifting of blame to the Plaintiffs for the condition of the door is "absolutely meritless." (DE 20 at 4.) Thus, any statements about the existing condition of the door did not induce the Plaintiffs reliance and do not constitute fraudulent statements for which the law recognizes a remedy.

Count IV of the Complaint is dismissed for failure to state a claim for fraud.

**3.**     *Unjust Enrichment*

In support of their claim for unjust enrichment, the Plaintiffs allege that "at the instance and request of the defendant's salesman, plaintiffs purchased a [$25,500.74] door and window unit and fully paid for [it] in advance." (Pf. Compl. ¶ 28.) The Plaintiffs allege that when the Defendant delivered an inadequate door of inferior quality, the Defendant became unjustly enriched at the expense of the Plaintiffs in the amount of $25,500.74. (*Id.* ¶¶ 29, 30.) The Defendant argues that the Plaintiff cannot maintain a claim for unjust enrichment because, under Indiana law, unjust enrichment operates only when there is no governing contract. The Defendant submits that because the Plaintiffs admit the existence of a "contract/express warranty, even attaching the contract to their Complaint, the doctrine of unjust enrichment does

10

not provide Plaintiffs with a basis for relief." (DE 15 at 11.) The Plaintiffs respond that they never had a written contract with the Defendant and did not attach any contract or invoice to their Complaint. (DE 20 at 5.) In their reply brief, the Defendant acknowledges that its statement about a contract attached to the Complaint was mistaken, but does not retreat from its position that unjust enrichment is not a recognizable theory of recovery for a commercial transaction.

"To prevail on a claim of unjust enrichment, a plaintiff must establish that a measurable benefit has been conferred on the defendant under circumstances in which the defendant's retention of the benefit without payment would be unjust." *Wright v. Pennamped*, 657 N.E.2d 1223, 1229 (Ind. Ct. App. 1995) (citing *Encore Hotels of Columbus, LLC v. Preferred Fire Protection*, 765 N.E.2d 658, 661 (Ind. Ct. App. 2002)). Unjust enrichment is relevant where there is a claim based on quasi contract or constructive contract. *DeMizio v. Romo*, 756 N.E.2d 1018, 1024–25 (Ind. Ct. App. 2001); *Indianapolis Raceway Park, Inc. v. Curtiss*, 386 N.E.2d 724, 560 (Ind. Ct. App. 1979). "Principles of equity prohibit unjust enrichment of a party who accepts the unrequested benefits another person provides despite having the opportunity to decline those benefits." *Turner v. Freed*, 792 N.E.2d 947, 950 (Ind. Ct. App. 2003). For this reason, under the theory of quasi-contract the court may impose liability, even though the parties have not mutually assented to a contract, to prevent one party from becoming unjustly enriched at the expense of the other. *Encore*, 765 N.E.2d at 662. Unjust enrichment does not operate when there is a governing contract, either express (evidenced by spoken or written words) or implied (evidenced by the conduct of the parties). *DiMizio*, 756 N.E.2d at 1025.

The Complaint allegations point to the existence of a contract, either express or implied. Under no set of facts consistent with the Complaint could the exchange of money for a custom

11

door unit have occurred without such a contract that was, at the very least, implied by the conduct of the parties. The Plaintiffs allege that on February 14, 2005, the Plaintiffs purchased a custom door and window unit through the Defendant's salesman for $25,500.74 (Pf. Compl. ¶¶ 3, 28), that the Defendant "expressly warranted" the door (*Id.* ¶ 8), that the Plaintiffs "duly performed each and every term and condition of said contractual agreement" including paying for the door (*Id.* ¶ 11), and that the door provided by the Defendant and installed in their home (*Id.* ¶ 3) was "inferior or inadequate" (*Id.* ¶ 30).[2] The only reasonable inference from the Complaint is that an express or implied contract governed the Plaintiffs' purchase of the custom door unit from the Defendant. Accordingly, it would be improper to invoke the equitable theory of unjust enrichment in this case and Count V is dismissed.

**4.**     *Conversion*

The Plaintiffs claim that the Defendant converted their money when it kept the purchase price of the door despite not providing a door that was free from defect. The Defendant argues that the conversion claim must be dismissed because the Plaintiffs did not have a continued property interest in the $25,500.74 that they used to buy the door. The Plaintiffs contend that they have alleged the basic elements of conversion.

A person commits criminal conversion when he "knowingly or intentionally exerts unauthorized control over property of another." Ind. Code § 35-43-4-3. Under Indiana Code section 34-24-3-1, a person who proves the elements of criminal conversion by a preponderance of the evidence can recover up to three times the actual damages, the costs of the action, and

---

[2] The Plaintiffs allege and incorporate all preceding allegations into every count of their Complaint.

reasonable attorney's fees.

"[M]oney may be the subject of a conversion action only if it is 'a determinate sum with which the defendant was entrusted to apply to a certain purpose.'" *Tobin v. Ruman*, 819 N.E.2d 78, 89 (Ind. Ct. App. 2004) (quoting *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 836 (Ind. Ct. App. 1995), *overruled on other grounds by St. Vincent Hosp. and Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 703 (Ind. 2002)); *Kopis v. Savage*, 498 N.E.2d 1266, 1270 (Ind. Ct. App. 1986) (stating that the money must be capable of being identified as a special chattel; a determinate sum with which the defendant was entrusted to apply to a certain purpose).

The Plaintiff does not allege that the funds it paid to the Defendant were to be held by the Defendant for a specific purpose. *See Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 849–50 (S.D. Ind. 2005) (dismissing the plaintiff's claim for conversion of money paid under contract for the performance of various professional services). Nor can such a conclusion be reasonably inferred from the Complaint. The Complaint, and all reasonable inferences derived from the Complaint, are that the property alleged to have been converted was money the Plaintiffs paid to the Defendant in exchange for the door unit and that the Plaintiffs retained no ownership or possessory rights in the money after paying it to the Defendant. The Plaintiffs' challenge to the Defendant's retention of the money they paid for the purchase of a door does not state a claim for conversion.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss Counts I, IV, V, and VI of the Complaint [DE 14] is GRANTED. The Defendant's Motion to Strike the Plaintiffs' response [DE 21] is DENIED as MOOT.

SO ORDERED on November 9, 2007.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION